## Commonwealth *v.* Sheehan, Appellant.

*Criminal law—Involuntary manslaughter — Trials — Commonwealth witnesses—Cross-examination—Defense.*

On the trial of an indictment for involuntary manslaughter, an objection to the cross-examination of the Commonwealth witness was properly sustained, where the purpose of the questions asked was to put the entire defense before the jury under the guise of cross-examination.

In such case the court did not err in sustaining the objection, and at the same time advising counsel for the defense that the wit-

ness would not be allowed to depart until the defendant would have the opportunity of calling her as a witness.

In a prosecution for involuntary manslaughter, growing out of an automobile accident, it was not error for the court to allow the Commonwealth to prove the course of conduct of the deceased person some distance from the scene of the accident, where such testimony was followed by other evidence gradually tracing his progress to the exact point of collision.

It was also proper to exclude an offer to prove that the deceased had on several occasions, during the summer preceding the accident, proceeded on the wrong side of the street. Such offer did not tend to establish that, under the conditions prevailing at the time of the accident, the deceased was, in point of fact, riding on the wrong side of the road.

Argued December 13, 1920. Appeal, No. 339, Oct. T., 1920, by defendant, from judgment of Q. S. Lycoming County, Dec. Sessions, 1919, No. 42, on verdict of guilty in the case of Commonwealth of Pennsylvania v. William A. Sheehan. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Indictment for involuntary manslaughter. Before WHITEHEAD, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty on which judgment of sentence was passed. Defendant appealed.

*Errors assigned* were various rulings on evidence and refusal to allow defendant to cross-examine Commonwealth's witness, as set forth in the opinion of the Superior Court.

*M. C. Rhone* and *W. E. Ritter,* for appellant.—The court erred in not allowing the defendant to proceed with the cross-examination of the witness Derr: Jackson v. Litch, 62 Pa. 451; Quigley v. Thompson, 211 Pa. 107;

McNeal v. Pittsburgh & Western Railway Co., 131 Pa. 184; Campau v. Dewey, 9 Mich. 381.

*Max L. Mitchell,* and with him *Carl Schug,* District Attorney, for appellee.—The defendant could not introduce his defense in the guise of cross-examination: Com. v. Nicely, 130 Pa. 261, 270; Com. v. Fencez, 226 Pa. 114, 116, 117; Com. v. Scouton, 20 Pa. Superior Ct. 503, 517.

OPINION BY HEAD, J., March 5, 1921:

The appellant was tried in the court below on an indictment charging him with involuntary manslaughter. The jury returned a verdict of guilty. The judgment of the court was duly pronounced and this appeal followed.

On a night in November, 1919, the defendant was driving an automobile northward on Market street in the City of Williamsport. His car collided with a bicycle ridden by a man named Young, who was moving southwardly on the same street. As a result of the collision, Young was so seriously injured that he died in a few moments. It was the contention of the defendant that he was driving his car at a moderate rate of speed; the car carried lights as the law required, and was pursuing its course on the east side of the said street, which would be in accordance with the universally known law of the road. He alleged that the deceased, ignoring that law, was coming southward on the east side of the street instead of the west side where he should have been traveling. The defendant further offered evidence to prove that he saw the oncoming bicycle quite a distance before it collided with his car; that its rider had the same opportunity to see the car, but in spite of warning from the horn, made no change in his course, and although at the last moment the defendant attempted to swing his car to the west side of the street in an effort to avoid the impending collision, the bicycle was driven into the side of his car with the unfortunate result already noted. The Commonwealth, on the other hand, offered a con-

vincing line of evidence tending to prove that the bicycle rider had been observing the law of the road; that for a distance of several blocks he had traveled quite close to the curb on the west side of the road; that the defendant was driving his car at a high rate of speed; that the collision actually occurred on the west side of the street, and that when the car of the defendant stopped it was headed north with one front wheel and one rear wheel up on the sidewalk of the west side of the street. With the evidence thus in direct conflict on the important questions of fact, no course was left open for the trial judge but to submit the case to the jury under proper instructions. We do not understand the learned counsel for the appellant to now complain of that action of the court. We therefore proceed to a consideration of the assignments of error complaining of certain rulings made by the trial judge and of the instructions to the jury in the submission of the case. The Commonwealth was permitted to prove, over the objection of the defendant, that a witness saw the deceased that evening, a few minutes before the occurrence, riding southward on Market street at a point several blocks distant from the place of the accident, and that he was then riding on the west side of the street near to the curb line. Had the offer to make such proof been confined to the isolated fact we have just mentioned, the objection would have been well taken. But it appears in the offer that the Commonwealth undertook to follow that evidence with the testimony of other witnesses gradually tracing the course of the bicycle rider down Market street almost to the exact point of collision. The offer in that respect was made good and the testimony indicated followed. It was a most material question of fact whether the deceased met his death whilst traveling along the west side of the street, or on the opposite side, as the defendant contended. When the testimony of all of the witnesses on that point was laid before the jury, its probative value must have been as clear to them as it now

is to us. We can perceive no valid objection the defendant may successfully urge to convict the learned trial judge of error in its admission. That assignment must therefore be dismissed.

At the time of the collision, there was with the defendant in the car a woman named Lillian Derr. It was important for the case of the Commonwealth to prove the defendant was actually driving the car at the moment of the collision. To establish that single fact the Commonwealth called the lady as a witness. As stated she was the companion of the defendant, presumably would be a friendly witness from his point of view, and therefore the Commonwealth contented itself, in her examination in chief, with proof of the one fact referred to. Upon cross-examination counsel for the defense sought to elicit from the witness every fact connected with the occurrence, and thus put the entire defense before the jury, under the guise of cross-examination of the Commonwealth's witness. The learned trial judge sustained an objection to the proposed cross-examination, at the same time advising counsel for the defense that the witness would not be permitted to depart from the court until the defendant, at the proper time, would have an opportunity of calling her as a witness. In point of fact she was subsequently called. In this ruling the learned trial judge was but following the doctrine so plainly laid down by the Supreme Court in Commonwealth v. Fencez, 226 Pa. 114. In that case when the witness was dismissed from the witness stand, he or she departed and was not available when the time came to put in the case of the defendant. Notwithstanding this fact, Mr. Justice STEWART thus declares the law: "The exclusion of certain questions asked of a witness for the Commonwealth upon cross-examination is a subject of another assignment. The purpose of the questions manifestly was to develop the defendant's own case, and related to nothing that the witness had testified to in chief. The circumstance that the witness was not in attend-

ance when afterwards called to testify for the defense, may have been unfortunate for the defendant; but does not affect in any way the correctness of the court's ruling." So in Commonwealth v. Nicely, 130 Pa. 261, where the defendant was convicted of murder in the first degree, Chief Justice PAXSON, in reviewing an assignment of error, complaining of a like ruling by the trial judge, said: "The witness on the stand was a sister of the defendants, and the Commonwealth very properly declined to allow the defendants to inject their defense into the case at this stage by a witness who might fairly be presumed to be favorable to the defense, but which the Commonwealth was compelled to call. The court below committed no error in holding that this was not proper cross-examination." The first assignment is dismissed.

The defendant offered to prove, by two or three witnesses, that during the summer preceding the accident they had seen the deceased on several occasions riding his wheel, going southward on Market street, and that upon these occasions he rode on the east side of the street; and this for the purpose of corroborating the theory of the defendant that, at the time of the accident, he was in point of fact on the wrong side of the street. The learned trial judge sustained an objection by the Commonwealth and in doing so we are of opinion his ruling was in accord with sound legal principles and established precedents. What we call the law of the road does not at all times, and under all circumstances, compel a traveler to proceed along any designated portion of the highway. For example, in broad day light, with no traffic in view, the traveler may select any portion of the highway that promises easy locomotion over its surface. The offer of proof therefore did not tend to establish that, under the conditions prevailing at the time of the accident, the deceased was, in point of fact, riding his wheel on the east side of the street instead of along the west side. In B. & O. R. R. Co. v. Colvin, 118 Pa. 230, Mr. Justice WILLIAMS, speaking for the

court, said: "It was also error to admit the evidence offered to show that the flagman had the reputation of being a careless and incompetent person for the place. He may have had a very bad reputation and yet have discharged his duty faithfully on this occasion......What he had done or left undone on former occasions was wholly immaterial and irrelevant, and the only effect of the admission of the evidence objected to was, to excite the prejudices of the jury against the flagman and his employer," etc.

We are also urged to say the learned trial judge erred in the brief instructions given to the jury on the question of reasonable doubt. There was no request for any special instructions on the subject, at least as the record is now made up. Perhaps this results because of what we shall now state from the record. At the conclusion of the charge the learned trial judge said: "The defendant has requested the court to charge you upon certain points which I now read and answer. At this point counsel for defendant states that the court having charged the jury on every question raised by the points of the defendant, with the exception of the 4th point, all the remaining points are now withdrawn." We have examined with care the charge of the trial judge on the subject and we are wholly unable to perceive any substantial ground upon which to rest an argument that any reversible error was committed. Of the few remaining matters assigned for error we think it sufficient to say that all of them have been carefully considered and that nothing of substance has been found in any of them to justify any interference with the judgment of the court below.

The judgment is affirmed and the record remitted to the court below and it is ordered that the defendant appear in that court at such time as he may be there called and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time the appeal in this case was made a supersedeas.