440 A.2d 602

**COMMONWEALTH of Pennsylvania,**

v.

**Christina LOBEL, Appellant.**

Superior Court of Pennsylvania.

Submitted June 22, 1981.

Filed Jan. 22, 1982.

Petition for Allowance of Appeal Denied July 19, 1982.

552

Donald G. Joel, Philadelphia, for appellant.

Gaele McLaughlin Barthold, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before HESTER, CAVANAUGH and BECK, JJ.

BECK, Judge:

This is an appeal from the judgment of sentence of the Court of Common Pleas of Philadelphia County, by the appellant, Christina Lobel, after conviction by a jury of perjury and false swearing in official matters, and from the denial of post-trial motions. She was sentenced to concurrent terms of imprisonment of three to twenty-three months for her three perjury convictions.

The charges arose from false testimony appellant provided on April 20, 1978 to a Special Investigative Grand Jury inquiring into fraudulent charity solicitations in Philadelphia County ostensibly aiding handicapped children.

Appellant was asked before that grand jury whether she had conducted cannister solicitations on March 24, April 1, April 8 and April 15, 1978 at four different shopping malls. She denied having been at the described locations on the above dates. Appellant subsequently received a message from the Philadelphia Police Department asking her to meet with detectives about her grand jury testimony. On April 25, 1978, appellant met with Detective DiGiacomo and the assistant district attorney assigned to the grand jury. She was shown photographs in which she was holding cannisters at the shopping malls on the dates asked about in the above proceedings. She admitted that it was she who was depicted in the photographs and admitted the falsity of her previous testimony. On April 28, 1978, Detective DiGiacomo testified before the grand jury that he had observed appellant soliciting at those shopping malls and presented the photographs. The grand jury subsequently recommended that charges of perjury and false swearing be brought against appellant, and she was indicted on those charges.

■ Appellant claims that the Commonwealth was required to present evidence of the absence of a retraction—this being an element of the offense of perjury which must be proved beyond a reasonable doubt by the Commonwealth.[1] This claim is without merit. The absence of retraction is not an element of the offense of perjury. The language of 18 Pa.C.S.A. 4902(a) which defines the offense of perjury does not include the absence of retraction as one of its elements.

A person is guilty of perjury, a felony of the third degree, if in any official proceeding he makes a false statement under oath or equivalent affirmation, or swears or affirms

---

1. Appellant alleges that the trial court erred in refusing to grant her demurrer at the close of the Commonwealth's case in chief because the Commonwealth failed to prove the absence of retraction. Since defendant presented evidence in her defense, she can not now challenge the ruling on her demurrer. See: *Commonwealth v. Mastrangelo*, 489 Pa. 254, 264, 414 A.2d 54 (1980), appeal dismissed *Mastrangelo v. Pennsylvania*, 449 U.S. 894, 101 S.Ct. 259, 66 L.Ed.2d 124 (1980).

the truth of a statement previously made, when the statement is material and he does not believe it to be true. See: *Commonwealth v. Broughton*, 257 Pa.Super. 369, 390 A.2d 1282 (1978); *Commonwealth v. Yanni*, 208 Pa.Super. 191, 222 A.2d 617, 619 (1966).

It is instructive to analogize the retraction provision contained in 18 Pa.C.S.A. 4902(d) to the recantation provision in 18 U.S.C.A. 1623(d). The language of those provisions is virtually identical:

No person shall be guilty of an offense under this section if he retracted the falsification in the course of the proceeding in which it was made before it became manifest that the falsification was or would be exposed and before the falsification substantially affected the proceeding. 18 Pa.C.S.A. 4902(d).

Where, in the same continuous court or grand jury proceeding in which a declaration is made, the person making the declaration admits such declaration to be false, such admission shall bar prosecution under this section, if at the time the admission is made, the declaration has not substantially affected the proceeding, or it has not become manifest that such falsity has been or will be exposed. 18 U.S.C.A. 1623(d).

The District of Columbia Circuit Court of Appeals, in *United States v. Moore*, 613 F.2d 1029 (D.C.Cir.1979), cert. denied, *Moore v. U. S.*, 446 U.S. 954, 100 S.Ct. 2922, 64 L.Ed.2d 811 (1980), in construing 18 U.S.C.A. 1623(d), held that since declarant realized that government officials knew he had perjured himself before the grand jury, his subsequent recantation defense was ineffective. In that case, declarant was confronted with a tape recording which established the falsity of his grand jury testimony. The Court held that the legislators intended that the recantation provision only be available in a perjury case when two conditions are met:

We conclude that Congress did not countenance in Section 1623(d) the flagrant injustice that would result if a witness is permitted to lie to a judicial tribunal and then,

upon only learning that he had been discovered, grudgingly to recant in order to bar prosecution. It has been held implicitly that the recantation provision is available to perjurers only if their previous false testimony has not substantially affected the proceeding *and* it has not become manifest that the falsity has been or will be exposed. We share that view unreservedly, and hold that the case at bar does not fall within the intendment of Section 1623(d). Id. at 1043. (footnote deleted).

That *Moore* court stated that when a statute contains an exception that does not describe the crime but rather rescues conduct otherwise proscribed, the burden rests with the accused to establish that his conduct fell within the bounds of that exception. We find that reasoning to be persuasive and conclude that appellant failed to meet her burden:

To be sure, as a matter of due process, the burden is upon the Government to prove beyond a reasonable doubt every essential element of offenses it charges. But when a statute sets forth a proviso which is not descriptive of the crime, but which operates to exempt conduct otherwise intercepted from the toils of the law, the burden is upon the accused to bring himself within its protection. Id. at 1044. (footnote deleted).

■ Also, it is clear from the language of 18 Pa.C.S.A. 4902(d) that in the instant case no valid retraction occurred. The fact that appellant only admitted the falsity of her grand jury responses five days after she made the sworn statements and after she was confronted with photographs demonstrating the falsity of her statements vitiates any argument she might have had relative to the validity of her retraction. Her perjured testimony was not retracted before it became apparent that it would be exposed.

Appellant next contends that the trial court committed reversible error in limiting appellant's cross-examination of Detective DiGiacomo. The detective testified very narrowly about his surveillance of defendant conducting cannister solicitations at different shopping malls to show the falsity of defendant's grand jury testimony. She attempted to

cross-examine the detective on matters significantly outside the ambit of the direct testimony relative to a meeting the two of them had several days after the grand jury testimony. The question here involves a choice between the two theories of cross-examination: "wide open" versus "restrictive." It is the restrictive view that is prescribed under 611(b) of the Federal Rules of Evidence which states that the judge may limit cross-examination with respect to matters not testified to on direct examination. The notion of wide open cross-examination is not subscribed to in this Commonwealth. That view holds that the cross-examiner is free to ask about any subject relevant to any issue in the case. In this Commonwealth, cross-examination is ordinarily limited to matters brought out on direct examination, except where the examiner is seeking to show bias. See: *Commonwealth v. Ervin*, 262 Pa.Super. 322, 396 A.2d 776 (1978); *Commonwealth v. Ransom*, 240 Pa.Super. 92, 360 A.2d 721 (1976); *Commonwealth v. Marker*, 231 Pa.Super. 471, 331 A.2d 883 (1974); *Commonwealth v. Salerno*, 179 Pa.Super. 13, 116 A.2d 87 (1955).

■ *Commonwealth v. Schmidt*, 437 Pa. 563, 569, 263 A.2d 382 (1970), is instructive in pinpointing the proper role of cross-examination. In that case, the appellant alleged that the trial court committed reversible error in limiting the scope of cross-examination of a Commonwealth witness. The Supreme Court held it to be within the discretion of the trial court and held that such a decision will not be reversed absent a showing of clear abuse. When the obvious purpose of cross-examination is to develop defendant's own case, a ruling by the trial judge to limit cross-examination is not an abuse of discretion. See also: *Commonwealth v. Fencez*, 226 Pa. 114, 117, 75 A. 19 (1910).

■ It is clear, though, that the appellant was not precluded from questioning the detective about a meeting the two of them had several days after the grand jury testimony. The restrictive view under which the trial judge operated merely forced her to delay that line of questioning until her turn to offer proof of her retraction. While waiting until

the prosecution finished its case might prove less effective as a trial tactic, labelling the trial judge's behavior in requiring such a delay reversible error, however, would be folly. It is clear, also, that the detective had no privilege not to be called as a witness by the cross-examiner. Indeed, appellant called the detective to testify about her alleged retraction; the Commonwealth then presented evidence through cross-examination of the detective suggesting that appellant had not retracted her perjured testimony.

The most important consideration here is that appellant's opportunity to present her defense through Detective DiGiacomo was not precluded. This witness for the prosecution had knowledge which was material, but not helpful, to the defense; the defendant called that witness in presenting her own case, but the jury determined from his testimony that there had been no retraction.

■ Appellant next contends that reversible error was committed by the trial judge in charging the jury thusly:

If you find the defendant retracted her statement only after she was advised that her statements were known to be false, then you may say that the retraction was not made before it became manifest that the falsification was or would be exposed.

Appellant claims evidence of the falsity of her statements to the grand jury had to be presented to the grand jury prior to her retraction in order to vitiate the power of that retraction. It appears that appellant's error is premised simply upon a misreading of § 4902(d). That section does not require exposure of falsehood to the tribunal; mere exposure to the defendant is sufficient. Any subsequent retraction by the defendant should be construed as not having been made before it became manifest that the falsification would be exposed.

It seems pure sophistry on appellant's part to pose the question of whether she, in light of her limited education, was aware at the time of her retraction that the photos would be exposed to the grand jury. The facts indicate that she retracted immediately upon being informed by the de-

tective of the surveillance. Logic dictates that it was the fear of some reprisal for her discovered untruth that precipitated her admission.

■ Appellant next claims that the trial court erred in ruling as a matter of law that the three falsifications were material. In doing so, she misconstrues 18 Pa.C.S.A. 4902(b):

Falsification is material, regardless of the admissibility of the statement under rules of evidence, if it could have affected the course or outcome of the proceeding.

Appellant asserts that there was no proof at trial that her misstatements had substantially affected the course of the grand jury proceedings and therefore those statements were immaterial. This analysis ignores the thrust of § 4902(b) which states that the question whether the misstatements affected the proceedings is itself immaterial. That it theoretically *could have* affected the outcome is sufficient. See: *Commonwealth v. Lafferty*, 276 Pa.Super. 400, 419 A.2d 518, 521–522 (1980).

Appellant is incorrect in concluding that her perjury was immaterial because the grand jury continued its investigation for a period of over two months after she testified.[2] Many inferences can be drawn from the continued investigation, the least plausible of which is that appellant's testimony was immaterial. Appellant falsely denied that she ever engaged in cannister solicitations. That this "could have" slowed or thwarted entirely the investigation into her association with Bishop Candelori is self-evident. Because the investigation continued after she made her false statements is not evidence that her statements were immaterial and did

---

2. Appellant alleges that the trial court erred in refusing to admit into evidence the second presentment of the grand jury. Appellant wished to offer that report to show that more than two months after she perjured herself, the investigation was still in progress. She concludes that this renders her falsehoods immaterial in that they did not "affect the proceedings." Again, the logic of her conclusion is based upon a misconstruing of § 4902(b). Also, this claim had been waived as counsel abandoned the issue after the trial judge noted that the fact counsel was attempting to prove had already been established by prior testimony.

not "affect the proceedings." The statute only requires that her statements "could have affected the course or outcome of the proceeding." Appellant nowhere argues that her false statement could not have affected the course or outcome of the proceeding.

Section 241.1 of the Model Penal Code [3] concludes that some falsifications are so trivial that they could not realistically affect the proceedings. It appears that appellant's misstatement went to the very heart of the scheme being investigated and standing alone could have blocked the entire investigation.

■ Appellant argues that the trial court erred in allowing the Commonwealth to amend two Bills of Information. Specifically added were the numeral "1" to a date and "East" to the name of a shopping mall. Appellant's claim is without merit. Under Pa.R.Crim.P. Rule 229, such amendment is allowed if it does not charge an additional or different offense. *Commonwealth v. Fladger*, 263 Pa.Super. 538, 398 A.2d 707, 708 (1979), held that amending bills of information regarding dates of offenses is not error. See also: *Commonwealth v. Stanley*, 265 Pa.Super. 194, 401 A.2d 1166, 1175 (1979).

■ Finally, appellant contends that the trial court erred in charging the jury that it must find that appellant "effectively" retracted her testimony before she could avail herself of that defense. *Commonwealth v. Reynolds*, 256 Pa.Super. 259, 277, 389 A.2d 1113 (1978), held that the charge must be upheld if it adequately and accurately reflects the law and is sufficient to guide the jury.

The instruction on "effective" retraction tracked directly the language of 18 Pa.C.S.A. 4902(d) in addition to § 15.-4902A of the Pennsylvania Standard Jury Instructions and § 241.1(4) of the Model Penal Code. As a correct statement of law, the above charge did not constitute reversible error.

Accordingly, judgment of sentence is affirmed.

**3.** The Pennsylvania perjury provision, 18 Pa.C.S.A. 4902, uses precisely the same wording as § 241.1 of the Model Penal Code.